UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
**STANLEY HODGE**,                             :

             Plaintiff,                    :      **MEMORANDUM**
                             **DECISION AND ORDER**
                             :

        **- against -**                          :      20-CV-0769 (AMD)

**COMMISSIONER OF SOCIAL**                     :
**SECURITY,**
                             :
             Defendant.                    :
-------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff appeals the Social Security Commissioner's decision that he is not disabled for purposes of receiving disability insurance benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  For the reasons that follow, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

On November 8, 2016, the plaintiff applied for DIB and SSI with onset date of May 15, 2016 based on his history of leg and back pain.  (Tr. 11, 216-28.)  The Commissioner denied the claim.  Administrative Law Judge ("ALJ") Gloria Pellegrino held a hearing on November 7, 2018, at which the plaintiff, represented by counsel, and a vocational expert testified.  (Tr. 52-91.)  In a February 6, 2019 decision, the ALJ denied the plaintiff's claim.  (Tr. 8-24.)  She found that the plaintiff had the following severe impairments: spinal stenosis, scoliosis, degenerative disc disease, herniated disc, sciatica, anxiety, depression, panic attacks and obesity.  (Tr. 14.)  She concluded, however, that the plaintiff's impairments did not meet any of the applicable

listings, and that he had the residual functional capacity ("RFC") to perform sedentary work. (Tr. 14-19.)

On December 11, 2019, the Appeals Council denied the plaintiff's request for review. (Tr. 1-5.)  The plaintiff appealed on February 12, 2020.  (ECF No. 1.)  The plaintiff and government cross-moved for judgment on the pleadings.  (ECF Nos. 9, 12.)

## LEGAL STANDARD

A district court reviewing a final decision of the Commissioner "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005).  If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld.  42 U.S.C. § 405(g).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).

The court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," but not "[w]here an error of law has been made that might have affected the disposition of the case."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (citations omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).  Moreover, the district court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit

2

findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004).

## DISCUSSION

The plaintiff disputes ALJ Pellegrino's RFC determination, as well as her findings that he could perform other jobs in the national economy. He also challenges the ALJ's determination that he was ineligible for benefits under the applicable regulations. I reject his claims about the appropriate weight to assign the state agency psychiatric consultant's opinion and the vocational expert's testimony, but conclude that remand is appropriate.

## I. RFC Determination

The ALJ must assess a plaintiff's residual functional capacity "based on all the relevant evidence in the case record." *Colegrove v. Comm'r of Soc. Sec.*, 399 F. Supp. 2d 185, 192 (W.D.N.Y. 2005) (citing 20 C.F.R. § 416.945(a)(1)). The assessment must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Martinez v. Colvin*, 286 F. Supp. 3d 539, 544 (W.D.N.Y. 2017) (citation and quotation omitted).

### a. ALJ's Evaluation of the Medical Evidence

An ALJ should give a treating physician's opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "[I]f the ALJ decides the opinion is not entitled to controlling weight, [she] must determine how much weight, if any, to give it." *Estrella v. Berryhill*, 2019 WL 2273574, at *2 (2d Cir. May 29, 2019). When the ALJ decides that a treating physician's opinion does not merit controlling weight, she must "comprehensively set forth [her] reasons for the weight

3

assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (internal citations omitted). Moreover, "the ALJ must explicitly consider, *inter alia*, (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 416.927(c)(1)-(6). If the ALJ does not "explicitly" consider these factors the case must be remanded unless "a searching review of the record" makes it clear that the ALJ applied "the substance of the treating physician rule." *Estrella*, 2019 WL 2273574 at *2 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

In 2013, Dr. Linda Bastien treated the plaintiff for leg and back pain. (Tr. 404.) The plaintiff also saw a family nurse practitioner, Kathleen Bernock. (Tr. 329.) After a November 2, 2016 examination, Ms. Bernock concluded that the plaintiff could not "stand for more than 1 hour without sitting and resting." (Tr. 330.) The ALJ attributed this opinion to Dr. Bastien instead of the nurse practitioner, and then assigned "some weight" to the opinion, noting that the "restriction that the claimant is capable of standing for one hour is too limited and not supported by the evidence." (Tr. 18.) In fact, Dr. Bastien did not treat the plaintiff after 2013, and never opined that the plaintiff could not stand for more than one hour. Under current regulations, the ALJ could have considered the nurse practitioner's opinion, but that was not true when the plaintiff filed his claim; under the rules at the time, family nurse practitioners like Ms. Bernock were not considered "acceptable medical source[s]." *Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 661 (2d Cir. 2020). "The regulations were amended in 2017 to add advanced practice registered nurses (a category that includes nurse practitioners) to the list of acceptable

medical sources, but the amended regulation applies only to claims filed on or after March 27, 2017," over four months after the plaintiff filed his claim. *Id.*

Because she attributed the opinion to the doctor, the ALJ did not consider the regulatory change in her opinion, and it is not clear whether she would have afforded Ms. Bernock's opinion any weight as a non-medical source. On remand, the ALJ should reevaluate the record and determine the weight that the various opinions merit.

Dr. Sanjeev Agarwal, an orthopedist, also treated the plaintiff, and on September 20, 2016 found that he had a "3+ year history of lower back pain" with his pain scale registering a "8-9/10 with intermittent radiations down his anterior thigh." (Tr. 455.) The plaintiff's pain was "worse with lifting, walking" and he experienced "pain with motion." (*Id.*) In each of six follow-up exams, the plaintiff's pain was still at least a "9/10." (Tr. 457, 460, 463, 466, 469, 472). The plaintiff's symptoms worsened over time; he developed "numbness, tingling [and] radiation down [his] leg." (Tr. 466.) Dr. Agarwal's exams showed a positive straight leg test, limited motion, weakness in knee extension and pain upon flexion, and his opinion was corroborated by other medical evidence. (Tr. 466-67.) The ALJ cited Dr. Agarwal's opinion, but did not specify the weight that it merited. On remand, the ALJ should assign a weight to Dr. Agarwal's opinion, and include the reasons for that decision. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (treating physician rule requires that a treating physician's opinion be given "controlling weight" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record) (internal citations omitted); *Halloran*, 362 F.3d at 33.

Similarly, the ALJ did not assign a weight to Dr. Oliver Mackey's opinion. Dr. Mackey, a podiatrist, saw the plaintiff twice in 2017 and treated him for bunions in his left foot. (Tr. 424,

428.)  On remand, the ALJ should consider Dr. Mackey's opinion and specify the weight it

deserves.  *See Halloran*, 362 F.3d at 33.

Drs. Carole Roc and A. Stockton also expressed opinions about the plaintiff's mental

health.  Dr. Roc, a psychiatrist, saw the plaintiff once in December of 2016 and diagnosed him

with "adjustment disorders, with depressed mood" and prescribed sertraline and Risperidone.

(Tr. 398.)  The ALJ gave significant weight to Dr. Roc's opinion, which was appropriate because

Dr. Roc's opinion is the only mental health evaluation by a treating physician.  Dr. Stockton, a

state agency psychiatric consultant, concluded based on a review of the plaintiff's record that the

plaintiff could "sustain attention and concentration, interact appropriately with coworkers and

supervisors, and adapt to changes in the work environment."  (Tr. 101.)  Dr. Stockton's report is

consistent with the record and the ALJ's decision to give Dr. Stockton's opinion significant

weight was appropriate.  20 C.F.R. §§ 416.912(b), 416.913a; *see also Little v. Colvin*, 2015 WL

1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in

the evaluation of medical issues in disability claims.  As such, their opinions may constitute

substantial evidence if they are consistent with the record as a whole.") (quotation and citation

omitted).

### b.  Credibility Determination

On remand, the ALJ should also include her evaluation of the plaintiff's credibility.  If a

plaintiff's allegations are not supported by "objective medical evidence, the ALJ must engage in

a credibility inquiry."  *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 306 (E.D.N.Y. 2017) (citation

and quotations omitted).  "Credibility determinations must include specific reasons for the

finding on credibility[.]"  *Woodcock v. Comm'r of Soc. Sec.*, 287 F. Supp. 3d 175, 176 (E.D.N.Y.

2017) (citations and alterations omitted).  The ALJ must consider (1) the claimant's daily

activities, (2) the duration, location, frequency and intensity of the claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medications that the claimant takes, (5) any treatment, other than medication, that the claimant has received, (6) any other measures that the claimant employs to relieve the pain, and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Although the ALJ determined that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[,]"  she did not explain how his testimony was inconsistent with the record.  (Tr. 16.)  She also noted that the plaintiff "walks to the store or places near his house without using a cane . . . [and] his medical records do not show any prescription for a cane," but did not consider the plaintiff's testimony that without his cane, he could not walk more than half a block without "going numb" and "turn[ing] back" due to the pain.  (Tr. 16, 69-70.)  The plaintiff also testified that he could not walk more than one block even with his cane.  (Tr. 70.)  The ALJ should consider the plaintiff's testimony in light of Dr. Agarwal's records, which include observations that the plaintiff had numbness and tingling in his legs.  (Tr. 466.)

On remand, the ALJ should also include a specific credibility determination, explain how she balanced the various factors, and identify any inconsistencies between the plaintiff's testimony and the rest of the record.  *See Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) (finding legal error when the ALJ did not explicitly refer to or discuss any of the credibility factors).

7

**II.  ALJ Determination of the Plaintiff's Work Capacity**

At step four, the Commissioner must determine whether the plaintiff can perform his past

relevant work.  If the plaintiff cannot perform his past relevant work, "the Commissioner must

determine that significant numbers of jobs exist in the national economy that the claimant can

perform."  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing 20 C.F.R.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v)).  The ALJ can make this determination "either by

applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert."

*Id*.  Under the first approach, the ALJ considers the plaintiff's age, physical ability, education

and work experience, and then determines by referring to the applicable rule in the Medical

Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 whether jobs exist

in the national economy that he can perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R.

§ 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983).  Under the second approach, the

ALJ can solicit testimony from a vocational expert as to "the existence and numbers of jobs in

the national economy that a claimant with a particular RFC can perform."  *Gravel v. Barnhart*,

360 F. Supp. 2d 442, 450 (N.D.N.Y. 2005).  An ALJ may rely on a vocational expert's testimony

as long as "there is substantial record evidence to support the assumptions upon which the

vocational expert based his opinion," and those assumptions "accurately reflect the limitations

and capabilities of the claimant involved[.]"  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir.

2014) (citations and quotations omitted).

The vocational expert testified that someone who required a "sit/stand option allowing for

a change of position briefly for one to two minutes every hour without leaving the workstation;

occasional crouching or stopping; [and was] limited to performing simple routine and repetitive

tasks"  could perform jobs with a specific vocational preparation ("SVP") rating of two,

including "call-center type occupations" or document preparation.  (Tr. 84-85.)  The ALJ found

that there were 173,000 jobs in the national economy that required "unskilled sedentary work

with an SVP of two," including a document preparer, telephone information clerk and call-out

operator.  (Tr. 19.)

The plaintiff argues that the job descriptions in the Dictionary of Occupational Titles

("DOT") do not comport with the vocational expert's testimony that the plaintiff is limited to

"simple routine and repetitive tasks."  While there might have been a possible conflict, there was

no actual inconsistency.[1]  The descriptions for a telephone information clerk, document preparer

and call out operating each have a General Education Development ("GED") reasoning level of

3.  A reasoning level of 3 requires an individual to "[a]pply commonsense understanding to carry

out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving

several concrete variables in or from standardized situations."  DICOT 249.587-018.  "[A]

reasoning level of three is not inconsistent with 'simple' work."  *Martinez v. Comm'r of Soc.*

*Sec.*, 2017 WL 1155778, at *17 (E.D.N.Y. Mar. 27, 2017); *see also Jones-Reid v. Astrue*, 934 F.

Supp. 2d 381, 408-09 (D. Conn. 2012), *aff'd* 523 F. App'x. 32 (2d Cir. 2013) (summary order)

("GED level 3 reasoning is not inconsistent with the ability to perform only simple tasks.").

### III.  Listings Analysis

Finally, the plaintiff challenges the ALJ's determination that he did not meet the

requirements for any of the applicable listings.  Under listing 1.04(A), a claimant is

presumptively disabled if she has "herniated nucleus pulposus, spinal arachnoiditis, spinal

---

[1] "Whenever the Commissioner intends to 'rely[ ] on [a] vocational expert's testimony,' she must identify and inquire into all those areas 'where the expert's testimony seems to . . . conflict with the Dictionary.'" *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019) (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).  Though the ALJ did not satisfy her affirmative obligation to identify and resolve any apparent conflict between the DOT and the vocational expert's testimony, this was harmless error because no conflict existed.  *Smith v. Colvin*, 2017 WL 281736, at *8 (D. Vt. Jan. 23, 2017).

stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture[ ], resulting in compromise of a nerve root . . . or spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). The ALJ did not cite the record in making her determination that the plaintiff's impairments did not "meet or medically equal[]" the criteria of 1.04(A).

The record suggests that the plaintiff might meet the criteria for a listed impairment. The plaintiff had an MRI of his spine that showed a "right foraminal disc bulge impinging L2 nerve root," and an EMG showed "possible . . . radiculopathy." (Tr. 469.) For more than a year before he filed for disability, the plaintiff had received regular treatment for back and leg pain; he also had positive sitting and standing straight leg raising tests. (Tr. 404, 458.) On remand, the ALJ should consider all the evidence in the record, seek additional medical opinions if necessary and re-evaluate whether the plaintiff's impairments meet Listing 1.04(A).

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion is denied, and the case is remanded for further proceedings consistent with this opinion.


**SO ORDERED.**

         s/Ann M. Donnelly

        ANN M. DONNELLY
        United States District Judge


Dated: Brooklyn, New York
       December 10, 2020